UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                       )
MARVIN MANN,                           )
                                       )   No. 2:15-cv-01507-RSL
                    Plaintiff,         )
        v.                             )
                                       )   ORDER REGARDING
THE BOEING COMPANY,                    )   CLASS CERTIFICATION
                                       )
                    Defendant.         )
_____)

This matter comes before the Court on "Plaintiff's Motion for Class Certification", Dkt. # 26. Having reviewed the parties' briefs and the remainder of the record, the Court finds as follows.

**BACKGROUND**

In 2011, plaintiff accepted a job offer as a Level K manager at Boeing, leaving his former position as a hourly electrical installer for the company. Decl. of Mann (Dkt. # 25) at ¶ 2. Level K is the lowest of three tiers of "non-executive" managers at Boeing. Decl. of Sykes (Dkt. # 37) at ¶ 7. Level K managers are sometimes referred to informally as "First Line Leaders" or "FLLs". Id. at ¶ 9. In Boeing's system of job classification, Level K managers (and other employees) are assigned to particular operations and subdivided further into "job families", each of which is identifiable by a classification code. Id. Plaintiff's position is classified as DAKU-K, or a Level K Manufacturing Manager. Id. at ¶ 8. Plaintiff remained in his DAKU-K position from 2011 through September 2015, when he resigned and returned to his former position

ORDER REGARDING CLASS CERTIFICATION

shortly after filing this suit. Decl. of Mann at ¶ 2-3.

Boeing does not have a "Manufacturing and Production Department of the 777 Program", but defendant asserts that several different occupational classifications within the 777 program directly involve manufacturing and production, including Level K managers in manufacturing, flightline, quality, and materials management. Decl. of Johnson (Dkt. # 35) at ¶ 12. Managers in each of these areas have distinct focuses and responsibilities. Decl. of Sagisi (Dkt. # 36) at ¶ 6-9. Even within the DAKU-K classification, managers may have varying levels of additional responsibilities, such as business planning and strategy, process improvement and "lean manufacturing" initiatives, staffing, and special assignments. Id. at ¶ 6. In addition, some Level K managers are not assigned a crew to manage, but instead manage a particular project or program. See, e.g., Decl. of Brewer (Dkt. # 34) at ¶ 2-3. Plaintiff claims that his position was focused on managing a production crew of hourly union employees and that he was not given these additional responsibilities. Reply Decl. of Mann (Dkt. # 43) at ¶ 2. Plaintiff did not intend to include managers with additional responsibilities besides manufacturing and production or managers without an assigned crew within the class definition. Id.

Plaintiff seeks to go forward with this litigation as the representative of a class he first defined as follows:

> All First Line Leaders (FLLs) in Manufacturing and Production who worked for Defendant in the State of Washington at any time from three years preceding the filing of this Complaint through the present

Compl. (Dkt. # 1) at 4. Following defendant's answer, plaintiff filed a motion for class certification containing a similar but slightly narrower class definition.

> First Line Leaders (FLLs) (Level K) in the Manufacturing and Production Department of the 777 Program who worked for Defendant in the state of Washington at any time from September 22, 2012, through the present.

Mot. (Dkt. # 26) at 4. Plaintiff claims that defendant has violated Washington State law by wrongfully denying overtime pay to employees who fall within this class definition through

ORDER REGARDING CLASS CERTIFICATION     -2-

improper invocation of the Executive Exemption and Administrative Exemption from Minimum Wage and Overtime Requirements.  Wash. Admin. Code §§ 296-128-510, 296-128-520.  Defendant notes that this class definition uses terminology not officially used by the company and contends that plaintiff cannot establish commonality or typicality under this proposed class definition.  Defendant argues that the proposed class includes managers from multiple job families with a wide variety of duties and responsibilities and requires individualized analysis for each member of the purported class.  Plaintiff replies that much of the defendants' offered testimony consists of employees not within the scope of the class he intended.  Reply (Dkt. # 44) at 8.  Though plaintiff still asks the Court to certify his class, his reply acknowledges that the version of the class as it stands is overbroad and offers yet another definition as an example of a clarified class definition:

> Boeing Job DAKU employees at its Everett facility directly supervising IAM members engaged directly in the assembly of 777 (but not the 777X) aircraft in the Everett factory but not including employees whose principal supervisory responsibilities were related to training, tooling, staffing, quality control or who held Boeing Production System positions or other positions involving cross operational initiatives including tactical manager positions.

Reply (Dkt. # 44) at 12.  The Court will focus its class certification analysis on the class definition for which plaintiff actually sought certification for in his motion.  Mot. (Dkt. 26) at 4.

## DISCUSSION

Plaintiff seeks class certification for his state law claims under Fed. R. Civ. P. 23.  Pursuant to Rule 23(a), members of a class may sue or be sued as representative parties if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A plaintiff seeking class certification must affirmatively demonstrate that each of these four elements are satisfied.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  To

determine this, it may be necessary for the Court to go "beyond the pleadings. Comcast Corp. v. Behrend, 133 S.Ct 1426, 1432 (2013). Defendant does not dispute plaintiff's assertion that the proposed class meets the numerosity and adequacy of representation requirements of Rule 23(a).

**Lack of Commonality**

To satisfy the commonality requirement, a plaintiff must be able to show that the claims of class members rely on a common contention capable of class-wide resolution in such a way that the issues may be resolved "in one stroke". Dukes, 564 U.S. at 350. What matters is not that a plaintiff raises common questions, but that those questions generate common answers that have the capacity to drive litigation in a class action. Richard A. Nagareta, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009). Plaintiff identifies three common questions: whether FLLs were properly labeled as "exempt" from overtime, whether pay practices applied equally to FLLs, and whether policies and procedures dictate a sufficient level of responsibility and authority as to meet the "executive" or "administrative" exemption. Mot. (Dkt # 26) at 9.

The first and third questions are functionally similar, and neither one generates common answers for each member of the class as plaintiff has defined it. Plaintiff's proposed class consists of all Level K managers across several different operations with a wide variety of responsibilities. Even just among DAKU-K's there are managers with fundamentally different duties from those described by plaintiff. Questions of exemption do not have common answers when there is significant variance in the duties and responsibilities of class members. O'Hearn v. Les Schwab Warehouse Ctr., Inc., No. C10-199RAJ, 2014 U.S. Dist. LEXIS 164300, at *13 (W.D. Wash Nov. 24, 2014). A common answer to the second question does not appear to be capable of driving class litigation in this case. Determining whether FLLs were treated the same under Boeing pay practices could be relevant to the class certification analysis. However, it would not necessarily lead to conclusions regarding the underlying claim of improper

ORDER REGARDING CLASS CERTIFICATION     -4-

exemption. Because plaintiff's proposed definition fails the commonality requirement of Fed. R. Civ. P. 23(a)(2), this Court need not determine whether plaintiff's claims are typical of the class under Rule 23(a)(3) or whether a class action can be maintained under Rule 23(b).

**Plaintiff May File Renewed Motion**

Plaintiff's task of creating a class definition that includes the intended group of employees without being overly broad is made more difficult by the complex nature of Boeing's job classifications and terminology. Plaintiff's reply requests that the court allow plaintiff to narrow his class definition to capture only the intended class of employees. Reply (Dkt. # 44) at 11-12. This Court has broad discretion in deciding whether to modify a class definition. Davoll v. Webb, 194 F.3d 1116, 1146 (10th Cir. 1999). It appears possible that the proposed class definition might be rewritten in a way that more precisely reflects its intended scope. Plaintiff may therefore renew the motion for class certification using a revised class definition. Any new definition will be subject to a new Rule 23 analysis to determine whether plaintiff may proceed as class representative. Because defendant will have an opportunity to respond to any amended class definition, its request to strike or file a sur-reply (Dkt. # 46) is denied as moot.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for class certification (Dkt. # 26) is DENIED. Plaintiff is given 21 days to file a renewed motion for class certification using a revised class definition.

Dated this 23rd day of August, 2016.

Robert S. Lasnik
United States District Judge

ORDER REGARDING CLASS CERTIFICATION    -5-