1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  MARVIN MANN,

10                    Plaintiff,

11            v.

12  THE BOEING COMPANY,

13                    Defendant.

Case No. C15-1507RSL

ORDER GRANTING DEFENDANT
BOEING'S MOTION FOR
SUMMARY JUDGMENT

14

15        This matter comes before the Court on "Defendant Boeing's Motion for Summary

16  Judgment." Dkt. # 74. In this case, plaintiff Marvin Mann claims that defendant The Boeing

17  Company ("Boeing") violated Washington state law by wrongfully denying him overtime pay

18  through improper invocation of the executive and administrative exemptions from Washington's

19  minimum wage and overtime requirements. Boeing seeks summary judgment on the question

20  whether plaintiff qualifies for the executive exemption. Having reviewed the parties' briefs,

21  declarations, and exhibits, and the remainder of the record, the Court grants Boeing's motion for

22  the reasons that follow.

I. BACKGROUND

23

24        From October 1996 to May 2002 and then again from June 2005 to November 2011,

25  plaintiff worked as a skilled electrical installer assembling airplanes for Boeing. Dkt. # 82, ¶ 2;

26  Dkt. # 76, ¶ 3; Dkt. # 75 at 74–75, 80–81. On November 4, 2011, plaintiff was promoted to the

27  position of Manufacturing Manager (also known as a First Line Leader, or "FLL," with the job

28  ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 1

classification "DAKU-K") in the Aft Systems Installation unit of the Manufacturing and Production Department for Boeing's 777 Program.  Dkt. # 82, ¶ 2; Dkt. # 76, ¶ 3; Dkt. # 75 at 76.  While working as an electrical installer, plaintiff was paid an hourly wage and was a member of the collective bargaining unit represented by the International Association of Machinists and Aerospace Workers.  Dkt. # 76, ¶ 3.  As an FLL, plaintiff was paid on a salaried basis and was no longer eligible for membership in the collective bargaining unit.  Dkt. # 75 at 8; Dkt. # 76, ¶ 3; Dkt. # 75 at 44.

The job description for plaintiff's FLL position states that the FLL

> Manages employees performing activities within multiple manufacturing disciplines.  Develops and executes business plans, policies and procedures and develops organizational and technical strategies.  Acquires resources, provides technical management of suppliers and leads process improvements.  Develops and maintains relationships and partnerships with customers, stakeholders, peers, partners and direct reports.  Provides oversight and approval of technical approaches, products and processes.  Manages, develops and motivates employees. . . .
>
> Ensures that projects are completed on schedule and within budget.  Has impact to own discipline or work unit.  Decisions would impact the ability to achieve results and/or schedules.  Directs daily operations of the work unit. . . . Directly manages non-management employees in daily operations.

Dkt. # 76 at 16–17.

Plaintiff's main responsibility as an FLL was supervising a crew of approximately one- to two-dozen mechanics – electrical installers and assemblers; structural mechanics; mechanical assemblers and installers; and sealers – in the Aft Systems Installation unit, primarily during the third shift from 10:00 p.m. to 1:30 a.m.  Dkt. # 75 at 7, 9, 12, 117; Dkt. # 82, ¶ 20; Dkt. # 76,

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 2

¶ 12.  Though Boeing internally designated this crew "Department 6027188," Dkt. # 75 at 10–11, 88–89; Dkt. # 76, ¶ 11, plaintiff knew the crew as "third shift aft SI," Dkt. # 75 at 96. The crew comprised a fixed roster of employees with fixed tasks, Dkt. # 75 at 91; Dkt. # 76, ¶ 11, and was primarily responsible for working on the 48-section joins and vertical fin joins of the 777 airplane.  Dkt. # 75 at 10, 82, 92–94.  Plaintiff was the sole FLL for this crew.  Dkt. # 76, ¶ 11.  As an FLL, plaintiff did not perform hands-on production work.  Dkt. # 75 at 11, 49. Rather, plaintiff was responsible for ensuring that his crew worked safely and efficiently, and that they met all production, quality, and schedule requirements.  Dkt. # 75 at 23, 101–02, 108–09; Dkt. # 76, ¶ 11.

To establish these requirements, Boeing regularly gives all FLLs a chart of tasks to be performed by their crew within a two-and-a-half day work cycle, also known as a "statement of work."  Dkt. # 82, ¶ 38.  While the FLLs and crew members are generally quite familiar with the tasks and the sequence in which they are to be performed, often circumstances arise that disrupt the ordinary sequence of tasks, and when this happens the FLL is responsible for reassigning crew members to work on an available task.  Dkt. # 82, ¶ 38; Dkt. # 75 at 110–11, 118–19, 124–25.  Team leaders – hourly crew workers with extra leadership responsibilities who report to the FLL – may also reassign crew members as needed.  Dkt. # 82, ¶ 38; Dkt. # 76, ¶ 14.

Plaintiff was also responsible for assigning overtime, approving crew members' timesheets, documenting infractions and taking disciplinary action against his crew members, informally settling crew member grievances, and ensuring that crew members kept current with all required training and certifications.  Dkt. # 75 at 23, 46, 109, 112–13, 133, 137–38, 139–42; see generally Dkt. # 77. Additionally, plaintiff interviewed applicants for a team leader position on the crew; per the collective bargaining agreement, upper management ultimately selected the most senior qualified applicant for the job.  Dkt. # 75 at 98.  Plaintiff received over 80 hours of management-specific training during his time as FLL, Dkt. # 78, ¶ 3, and he received positive performance reviews, see Dkt. # 75 at 36–41; Dkt. # 76 at 29–46.

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 3

Between November 4, 2011 and January 2013, FLLs were paid for any work in excess of forty hours per week at a rate of their regular hourly rate plus $6.50 per hour.  Dkt. # 82, ¶ 5.  In February 2013, Boeing changed its overtime policy so that FLLs were no longer paid an additional $6.50 for each overtime hour worked; instead, FLLs would be permitted to "flex" their time.  Dkt. # 82, ¶ 6.  In February 2014, the director of the Manufacturing and Production Department, Peter Johnson, informed department leadership that FLLs would no longer be permitted to "flex" their time.  Dkt. # 82, ¶ 8.  FLLs are, however, eligible for bonus compensation based on their individual performance.  Dkt. # 76, ¶ 19.

On September 11, 2015, plaintiff returned to his former hourly position as an electrical installer, where he is eligible for overtime pay.  Dkt. # 76, ¶ 3; Dkt. # 75 at 33, 34, 49, 77.  Due to his eligibility for overtime pay, plaintiff now earns approximately 40% more per year than he did as an FLL.  Dkt. # 82, ¶ 12.

On September 22, 2015, plaintiff filed this lawsuit, alleging that Boeing had violated Washington's Minimum Wage Act and Wage Rebate Act by erroneously classifying his FLL position as exempt and in turn failing to compensate him for overtime worked.  Dkt. # 1.  Boeing now seeks summary judgment on the question whether plaintiff qualifies for the executive exemption under Washington law.  Dkt. # 74.

## II. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact which would preclude the entry of judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to designate specific facts showing that there is a genuine issue of material fact for trial.  Id.

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 4

at 324.  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court will view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Mueller v. Auker, 576 F.3d 979, 991 (9th Cir. 2009).

**B.      The Executive Exemption to the Overtime Requirement**

Washington law requires that employees be paid at one-and-a-half times their regular rate for work in excess of forty hours per week.  RCW 49.46.130(1).  This requirement does not extend, however, to workers "employed in a bona fide executive, administrative, or professional capacity . . . as those terms are defined and delimited by rules of the director."  RCW 49.46.010(3)(c).  While Boeing argues that plaintiff is exempt from the overtime requirement under either the executive or administrative exemption, the executive exemption is the focus of this summary judgment motion.

Whether an employee qualifies for the executive exemption is "a legal conclusion based on factual inferences drawn from historical facts."  Sattler v. Consolidated Food Mgmt., 93 Wn. App. 1052, at *2 (1999) (quoting Tift v. Professional Nursing Servs., Inc., 76 Wn. App. 577, 582 (1995)); see also Fiore v. PPG Industries, Inc., 169 Wn. App. 325, 342 n.9 (2012) (holding that where there is no factual dispute as to what duties the employee actually performed, the question whether the exemption applies is a matter of law).  Boeing bears the burden of showing that this exemption applies to plaintiff.  Drinkwitz v. Alliant Techsystems, Inc., 140 Wn.2d 291, 301 (2000).

The Washington Department of Labor and Industries's implementing regulations define

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 5

an "individual employed in a bona fide executive . . . capacity" as any employee:

> (1) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
>
> (2) Who customarily and regularly directs the work of two or more other employees therein; and
>
> (3) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
>
> (4) Who customarily and regularly exercises discretionary powers; and
>
> (5) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the work week to activities which are not directly and closely related to the performance of the work described in paragraphs (1) through (4) of this section: Provided, That this paragraph (5) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20 percent interest in the enterprise in which he is employed; and
>
> (6) Who is compensated for his services on a salary basis at a rate of not less than $155 per week exclusive of board, lodging, and other facilities . . . .

WAC 296-128-510.  Subsection (6) of this regulation, however, further provides:

> That an employee who is compensated on a salary rate of not less [than] $250 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 6

> of the work of two or more other employees therein, shall be deemed
> to meet all of the requirements of this section.

WAC 296-128-510(6).  This language is adopted from an earlier version of a federal regulation implementing the federal Fair Labor Standards Act (FLSA).  Here as in the FLSA context, the parties refer to the requirements outlined in Subsection 6 as the "short test" for the executive exemption, and of the regulation's full list of six requirements as the "long test."

Plaintiff concedes that two of the short test's three elements are met:  that he was compensated at a rate of not less than $250 per week, Dkt. # 75 at 9, and that he supervised the work of two or more other employees, Dkt. # 75 at 11.  See WAC 296-128-510(6).  Accordingly, plaintiff and Boeing's dispute turns on the last element – whether plaintiff's "primary duty" as FLL consisted of the "management" of "a customarily recognized department or subdivision" of "the enterprise in which he [was] employed."

1.    *Management as Primary Duty*

Boeing presents evidence – and plaintiff does not dispute – that plaintiff's "'primary duty' was to manage his crew of employees."  Dkt. # 80; see also Dkt. # 75 at 126–27.  Plaintiff argues, however, that because his discretion was limited by Boeing's policies, the "management" that he performed was not the sort of executive function contemplated by the overtime exemption.

Specifically, plaintiff cites the Washington Department of Labor and Industries's Administrative Policy on the Executive Exemption, ES.A.9.3 (July 15, 2014), which instructs that "Management includes the exercise of control, direction and authority over the workflow and/or work force," and lists various duties that may constitute "management," such as

> Interviewing, selecting, and training of employees; setting and adjusting
> their rates of pay and hours of work; directing their work; maintaining
> their production or sales records for use in supervision or control;

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 7

appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the employees and the property.

Dkt. # 81 at 10.  Plaintiff argues that he did not participate in the hiring of his crew; that he did not train his crew; that he did not set pay rates or adjust work hours; that he did not direct the work of the crew; that he had no authority to issue discipline; and that his crew's assignments were determined by the statement of work.

But plaintiff concedes that he participated in the selection of his crew's team leader by interviewing applicants; that he documented policy violations and delivered disciplinary actions; that he ensured that his crew attended all necessary trainings and assigned crew members to different tasks with the goal of "cross-training" them; that he had authority to assign overtime hours; that he reassigned tasks as necessary to accommodate unexpected changes in the production schedule; that he maintained records of the status of the airplane build at the end of each shift; that he handled grievances informally, though sometimes with a union shop steward; that he assigned jobs at the beginning of each shift; that he was encouraged to suggest process improvements; and that he was the point of contact for his crew in case of an emergency.  Dkt. # 82, ¶¶ 20–45.  Moreover, plaintiff does not dispute that he performed no hands-on production work as an FLL, clearly distinguishing his job function from that of his crew members.  Dkt. # 75 at 11.  The exhibits introduced by Boeing, particularly plaintiff's deposition, support these admissions.

In light of these undisputed facts, the Court concludes that as a matter of law plaintiff's

1  primary duty as FLL was "management," as that term is used in the overtime regulation and

2  further defined by the Washington Department of Labor and Industries's Administrative Policy

3  on the Executive Exemption.  In Reed v. City of Asotin, 917 F. Supp. 2d 1156 (E.D. Wash.

4  2013), the court found that an employee's primary duty was management where his

5  responsibilities included "making recommendations . . . concerning the hiring, termination, and

6  discipline of police officers; assigning tasks and shifts to subordinates; evaluating the

7  performance of subordinates; evaluating the department's training needs; [and] evaluating

8  departmental compliance with rules and regulations."  Id. at 1159, 1163–64.  Plaintiff's

9  circumstances are more similar to the facts of that case than to the circumstances in Jones v.

10 Rabanco, Ltd., 439 F. Supp. 2d 1149 (W.D. Wash. 2006), where the employee spent roughly

11 35% of his time in a managerial capacity and the rest of his time on non-managerial tasks.  Id. at

12 1167–68.  And while the "long test" for the executive exemption inquires into the degree of

13 discretion exercised by an employee, the "short test" does not.  See WAC 296-128-510(6).

14 Accordingly, the Court finds that the first part of the contested executive exemption element is

15 satisfied.

16        2.    *Customarily Recognized Department or Subdivision*

17        Boeing argues that plaintiff's crew constituted a "customarily recognized department or

18 subdivision" of Boeing's manufacturing department – specifically, Department 6027188, as it

19 was designated in Boeing's internal personnel and budget files.  Plaintiff responds that he was

20 never aware of this departmental designation, and argues that the "department or subdivision"

21 prong should not be conflated with the "two or more employees" element of the short test for

22 exemption.

23        But the Court need not conflate these two steps of the analysis to conclude that plaintiff's

24 crew was a "customarily recognized department or subdivision."  Though plaintiff himself was

25 not aware of Boeing's internal departmental designation for his crew, he was aware of a different

26 name for that crew – "third shift aft SI."  Dkt. # 75 at 96.  Plaintiff also concedes that the crew

27

28 ORDER GRANTING DEFENDANT BOEING'S
   MOTION FOR SUMMARY JUDGMENT - 9

had a fixed personnel, all of whom reported to him, and that they had a designated work area and were responsible for specific tasks that could only be performed during the third shift.  Dkt. # 75 at 76, 79.  Moreover, other Boeing staff recognized plaintiff's crew as a distinct department. Dkt. # 75 at 33; Dkt. # 76, ¶ 11.  Accordingly, the Court finds that the second part of the contested executive exemption element is satisfied.

Because plaintiff's primary duty as an FLL was the management of a customarily recognized department, Boeing correctly classified him as exempt under the executive exemption.  See WAC 296-128-510(6).  Boeing is entitled to summary judgment on plaintiff's Washington Minimum Wage Act claim.  And because plaintiff's other claims are predicated on plaintiff's Minimum Wage Act claim, Boeing is entitled to summary judgment on those, as well.

### III.  CONCLUSION

For all the foregoing reasons, Boeing's motion for summary judgment (Dkt. # 74) is GRANTED.  The Clerk of Court is directed to enter judgment against plaintiff and in favor of Boeing.


DATED this 7th day of August, 2017.



Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT BOEING'S
MOTION FOR SUMMARY JUDGMENT - 10